**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| EVELYN MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:25-cv-00923-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| NATIONWIDE MUTUAL INSURANCE | ) | |
| COMPANY; JOHN T. HERNDON, III, | ) | |
| *Individually*; and HERNDON INSURANCE | ) | |
| AGENCY, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiff Evelyn Moore's ("Ms. Moore") motion to remand, ECF No. 4. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

### A.  The Fire and Insurance Claim

Ms. Moore alleges that defendant Nationwide Mutual Insurance Company ("Nationwide") is obligated to pay a claim she made under her home insurance policy for fire damage at her home. ECF No. 1-1, Amend. Compl. ¶ 15. According to Ms. Moore, she entered into an insurance contract with Nationwide and its agents, defendants John T. Herndon, III ("Mr. Herndon") and the Herndon Insurance Agency, Inc. (the "Herndon Agency") (collectively with Nationwide, "defendants"), to provide coverage for her home between May 29, 2023 and May 29, 2024 (the "Policy"). Id. ¶¶ 7–8.

Ms. Moore claims that her daughter, Ashley Moore ("Ashley"), is mentally incapacitated and "has been institutionalized on numerous occasions and remains institutionalized" but periodically stayed overnight at Ms. Moore's home. Id. ¶¶ 21–25, 27. According to Ms. Moore, Ashley started the fire that caused extensive damage to Ms.

1

Moore's home on August 12, 2023.  Id. ¶¶ 13, 26.  Both the home and Ms. Moore's personal possessions inside were deemed a total loss.  Id. ¶ 14.

Ms. Moore asserts that she submitted a claim to Nationwide under the Policy on August 12, 2023.  Id. ¶ 16.  However, Nationwide denied that claim on September 20, 2023, under the Policy's "intentional act exclusion."  Id. ¶¶ 17–18.  In general, Ms. Moore's position is that the intentional act exclusion does not apply because Ashley is not an "insured" and because, due to her condition, Ashley is incapable of committing an intentional act and that Nationwide's denial of coverage is unreasonable.  Id. ¶¶ 20–27, 29–48.  She also asserts that defendants either knew or should have known that Ashley periodically stayed at the home and that they "have taken advantage of an elderly person with an incapacitated child who is institutionalized" and acted in bad faith.  Id. ¶¶ 35–48.

### B.  Commencement of this Action and Removal

Ms. Moore filed this action in the Charleston County Court of Common Pleas on July 10, 2024.  Moore v. Nationwide Mut. Ins. Co., 2024-CP-10-03500 (Charleston Cnty. Ct. C.P. July 10, 2024).  She amended her complaint on July 15, 2024, to assert claims for (1) breach of contract and (2) bad faith.  ECF No. 1-1, Amend. Compl.  Nationwide was served a summons and amended complaint on August 2, 2024.  ECF No. 1-1 at 1.

On February 5, 2025, Nationwide requested information from Ms. Moore on whether she had served Mr. Herndon or the Herndon Agency.  ECF No. 1 at 2.  When Nationwide did not immediately receive any response to its request, it hired a private investigator to look into Mr. Herndon and the Herndon Agency on February 12, 2025.  Id. at 3.  That same day, the investigator discovered Mr. Herndon's obituary, which indicated that Mr. Herndon had died on September 26, 2021—years before both the fire

and Ms. Moore's denied insurance claim.  Id.; see also ECF Nos. 1-2 (Mr. Herndon's

obituary); 5-2, Little Aff. ¶ 6.  The investigator also discovered—apparently by calling

the South Carolina Department of Insurance ("DOI"), searching the DOI's online

database, and calling Mr. Herndon's widow—that there had not been an active license for

Mr. Herndon or the Herndon Agency since approximately 2014.  Little Aff. ¶ 7.

Shortly after discovering this information, Nationwide removed the case to this

court on February 19, 2025.  ECF No. 1.  Ms. Moore then moved to remand the case on

March 19, 2025, ECF No. 4, and Nationwide responded in opposition on April 2, 2025,

ECF No. 5.  As such, the motion is now fully briefed and ripe for the court's review.

## II.  STANDARD

Federal courts are of constitutionally limited jurisdiction.  Original jurisdiction

exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount

in controversy exceeds the sum or value of $75,000 and the claim is between citizens of

different states, see 28 U.S.C. § 1332.

Generally, any civil action brought in a state court of which the district courts of

the United States have original jurisdiction may be removed by the defendant to the

district court of the United States for the district and division embracing the place where

such action is pending.  28 U.S.C. § 1441(a).  "The party seeking removal bears the

burden of demonstrating that removal jurisdiction is proper," Nordan v. Blackwater Sec.

Consulting, LLC (In re Blackwater Sec. Consulting, LLC), 460 F.3d 576, 583 (4th Cir.

2006), and doubts regarding the propriety of removal are to be resolved in favor of

retained state court jurisdiction, Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th

Cir. 1993).  Because removal raises significant federalism concerns, "[i]f federal

jurisdiction is doubtful, a remand is necessary." <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994).

### III.  DISCUSSION

The court ultimately finds that remand is appropriate because Nationwide's notice of removal was technically deficient and untimely.  The court will start by addressing the technical deficiency.

In the notice of removal, Nationwide contended that it is a citizen of Ohio and that Ms. Moore is a citizen of South Carolina.  ECF No. 1 at 5.  It then accused Ms. Moore of fraudulently joining Mr. Herndon and the Herndon Agency in this action "with the objective of defeating removal by maintaining a nondiverse party."  <u>Id.</u>  The basis for this accusation, according to the notice of removal, was that Mr. Herndon died several years before the events giving rise to this lawsuit.  <u>Id.</u> at 4–6.  Thus, Nationwide contended, in its notice of removal, that Ms. Moore has no possibility of recovery against Mr. Herndon because "[Mr.] Herndon (owner of Herndon . . . Agency) was deceased . . . at the time of [the fire] and the subsequent filing" and because, under South Carolina law, a deceased individual cannot be a party to an action.  <u>Id.</u> at 5.

The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999).  To demonstrate fraudulent joinder, the removing party has the burden of proving "either: [1] [t]hat there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] [t]hat there has been outright fraud in the

plaintiff's pleading of the jurisdictional facts." Id. at 464 (4th Cir. 1999) (alterations in

original) (quoting Marshall, 6 F.3d at 232). "The burden on the defendant claiming

fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a

claim against the nondiverse defendant even after resolving all issues of fact and law in

the plaintiff's favor." Id. (quoting Marshall, 6 F.3d at 232–33).

       In general, the court shares Nationwide's skepticism of Ms. Moore's allegations

that Mr. Herndon played some role in the decision to deny her claim several years after

his death. Nevertheless, even if Mr. Herndon is not a proper party to this action because

of his death, see S.C. R. Civ. P. 25 (providing that a court may substitute a deceased party

for a proper party and that "[i]f substitution is not made within a reasonable time, the

action may be dismissed as to the deceased party"),[1] Nationwide's notice of removal

neither gave any clear indication of why Ms. Moore could not recover against the

Herndon Agency, nor did it provide any information about the Herndon Agency's

citizenship, see ECF No. 1. These omissions render the notice of removal technically

deficient. See 28 U.S.C. § 1446(a) (requiring that the notice of removal include "a short

and plain statement of the grounds for removal"); cf. Hawes v. Cart Prods., Inc., 386 F.

Supp. 2d 681, 688–89 (D.S.C. 2005) (finding that a notice of removal was sufficient

when it listed the citizenship of parties remaining in the action and that the non-diverse

parties had been dismissed).

---

[1] Because the court ultimately finds that Nationwide's notice of removal was
technically deficient and untimely, the court leaves these sorts of determinations of
whether Ms. Moore can recover against Mr. Herndon or the Herndon Agency to the
South Carolina courts.

Beyond that, even if the notice of removal had included all of the appropriate information, it would still have been untimely. When the basis of removal is apparent from the allegations stated in a plaintiff's initial pleadings, the defendant must remove the case within thirty days after either receiving a copy of the initial pleading or service of a summons. 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3). When the basis of removal is fraudulent joinder, the thirty-day window begins to run when the removing party "could have intelligently ascertained . . . [whether or not] it had valid arguments that [the claims against the non-diverse parties] should fail." See Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 954 (D. Md. 2004) (second and third alterations in original) (quoting Deming v. Nationwide Mut. Ins. Co., 2004 WL 332741 (D. Conn. Feb. 14, 2004)).

In its response to Ms. Moore's motion, Nationwide argues that Ms. Moore cannot possibly recover against either Mr. Herndon or the Herndon Agency because an insured may only bring a bad faith claim against an insurance company and not its individual agents. ECF No. 5 at 10–13. Even if Nationwide is correct in this assessment, Ms. Moore asserted her bad faith claims against Mr. Herndon and the Herndon Agency in her amended complaint, Amend. Compl. ¶¶ 35–48, which Nationwide received on August 2, 2024, ECF No. 1-1 at 1. Yet Nationwide did not file its notice of removal until February 19, 2025—over 200 days later and well past the thirty-day deadline for doing so. ECF No. 1.

6

Nationwide also contends, in its response, that there is no possibility of recovery against the Herndon Agency because the Herndon Agency apparently closed in 2014 and—like Mr. Herndon himself—could not have had a role in the decision to deny Ms. Moore's claim. ECF No. 5 at 13. Consequently, Nationwide argues that its notice of removal was timely because it filed the notice shortly after learning of both Mr. Herndon's death and the Herndon Agency's closure in February 2025. Id. at 15. However, to the extent Nationwide bases its removal argument on these theories, the court finds that Nationwide "could have intelligently ascertained" these facts by conducting a quick search of the internet and the DOI database at any point after Nationwide received Ms. Moore's amended complaint.[2] See Riverdale Baptist Church, 349 F. Supp. 2d at 954; accord 14C Charles Alan Wright et al., Federal Practice and Procedure § 3731 (rev. 4th ed.), Westlaw (database updated May 21, 2025) ("A number of courts have gone further and have declined to reactivate the removal period when the defendant could have ascertained a case's removability by exercising some diligence or, as some district courts have pointedly indicated, when removability was 'intelligently ascertainable.'" (footnotes omitted)). Thus, resolving all doubts in favor of state court jurisdiction, the court finds that Nationwide has not met its heavy burden of establishing the propriety of removal, and this case must be remanded.

---

[2] Ms. Moore spends much of her thirty-five-page memorandum in support of her motion to remand arguing that Nationwide could have easily learned of Mr. Herndon's death via a simple internet search long before it filed its notice of removal. ECF No. 4-1 at 12. Likewise, Nationwide retorts in its twenty-one-page response that Ms. Moore should have investigated and discovered Mr. Herndon's death before filing—and having her counsel sign—the complaints instigating this lawsuit. ECF No. 5 at 15–16 (citing S.C. R. Civ. P. 11). The court posits that both sides may be correct in their respective assessments but leaves this determination to the South Carolina courts.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Ms. Moore's motion to remand and **REMANDS** this case to the Charleston County Court of Common Pleas.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 27, 2025
Charleston, South Carolina**